Welcome to the Ninth Circuit. Judge Tashima and I are honored to have our colleague Judge Lawrence Pearsall from the District of South Dakota sitting with us by designation today. We have a very full calendar this morning. No submitted cases and five argued cases. The first of which is United States v. Bain. So, counsel, if you'll approach the podium. Thank you. Good morning. May it please the Court, my name is Tanya Peterson and I represent the appellant, Neal Martin Bain. Time permitting, I'd like to reserve two minutes for rebuttal. Keep an eye on it. I'll try to help you. Thank you, Your Honor. This case is about the fourth element of armed bank robbery. This is the same element that the magistrate judge and counsel for both parties entirely dispensed with at the change of plea proceeding, the second change of plea proceeding. This is the same element that appellant pointedly and unwaveringly declined to admit, and this is the same element that the appellant was never asked to admit, acquiesce in, or agree to at the second change of plea hearing. This case also involves two interrelated underpinnings of Rule 11, the need for a sufficient factual basis, and the need for the defendant to be thoroughly and completely and clearly advised of each of the elements of the events to which he is pleading guilty. They are interrelated and both come into play in this case. Because in this case, the magistrate judge did at one point in time during the initial change of plea proceeding accurately advise appellant regarding the fourth element, that is, that the government would be required to prove that in committing a bank robbery, he in fact assaulted, the magistrate judge used the term, and put in jeopardy the life of any person. Kennedy, what role does what your client's counsel said play? Your client originally refused the government's request that he had put someone in fear and so on. Correct. The second iteration, it was what we ended up with, and although he seemed a little reluctant, the lawyers seemed to agree. Did he have the ability to, if you will, acquiesce for Mr. Bain? No, Your Honor, not without asking Mr. Bain himself. I don't believe that the lawyer did have the ability to acquiesce on his behalf. Do you have any case law that would substantiate that? No, I do not, as I stand here right now. Well, what difference does it make even if he asked his client, I've taken thousands of guilty pleas, it's what the client says. The lawyer doesn't have, on that factual admission, I don't think the lawyer has the ability to do it. I agree. I don't believe that the lawyer has the ability to do it. And in this case, additionally, the client, Mr. Bain's unequivocal expression of declining or refusing, or however you want to put it, to admit to that element has been, was on the record since well before the second change of plea proceeding. So particularly in that context, I don't think that something that the lawyer says at the change of plea proceeding can erase that. I also don't know that the record's entirely clear that the lawyer specifically acquiesced in a finding that that element had been proven at the second change of plea proceeding, perhaps by. So what? So what if he agreed? It doesn't make any difference, does it? In our view, no, it does not. Mr. Bain needed to admit that element or agree that it had been proven at a minimum, and he did not do so. But isn't this one of those things, watch out what you wish for, because you might get it? In terms of the result of this proceeding, Your Honor? Right. If you go back and you get to try it, I mean, he's subject to another sentencing. Absolutely, Your Honor. He is either, if the relief is granted that we're requesting and this Court vacates his conviction on count two and remains the other two counts for resentencing to permit the district court judge to view all the circumstances of all three counts, Mr. Bain's options, obviously, at that point would be to negotiate a different plea with the government that perhaps did not involve armed bank robbery and be sentenced on that, or stand on his plea of not guilty and go to trial. Our position is on the facts of this case, Mr. Bain could, in fact, go to trial, conceivably be found guilty of armed bank robbery. He equally conceivably could be found not guilty of armed bank robbery, and those are his options. What's the test? As I look at the cases here, they seem to balance between the intentionality versus what the victim, if you will, in this case the bank teller, felt. If we go on the basis of what your client intended, doesn't that permit a defendant to essentially game the system? Your client was convicted of multiple bank robberies in earlier times that don't count for the sentencing, but bottom line, he's a really experienced bank robber. And he, the teller said he or she was frightened. Your client said, oh, I just carry this in my pocket all the time. I just happen to put it there. Does the determination of whether or not the factual basis is here depend on what your client says his intention was? Only in part, Your Honor, on the factual basis for the plea. Certainly, his stated intention is, comes into play. All the other circumstances, this is the difficulty when we're coming up on appeal on a limited record and there's been no trial, so there's been no full airing of the circumstances necessarily. There was an indication in the record by appellate's counsel at the time of sentencing or near the time of sentencing that there were other tellers present who weren't even aware the knife was there. I think all of those certain --- Kennedy, I think you're conflating two different things. Don't you think the element of whether, I guess, for bank robbery, there's one element is that there was the use of force, fear or intimidation, right? Correct. And, but that, but to add the armed allegation is an entirely different element. And that's an, isn't that an objective test for whether or not the person was armed or is that subjective? In other words, you know, is it, the teller says, well, I thought he had a gun in his pocket. Is that enough to prove armed robbery? Well, Your Honor, it depends in part on which prong of the fourth element we're going under. If we're going under the assault element, it's our position that --- Well, what element was this case tried under? Our position is that it's not under either. I mean, not tried, but, you know, the plea taken under. Our position was that it wasn't taken under either, that there was no establishment of either prong. In the government's answering brief, they've adopted the--- Was there any inquiry at all, I guess it would be by the magistrate judge, into this armed element? The inquiry that the magistrate judge made during the actual change of plea colloquy was to recite what was written in the factual basis that had been provided by defense counsel. To that end, she asked Mr. Bain whether he put the knife on the counter with the plastic bag, and he said yes. Those are the facts that we know that he admitted to from the plea colloquy. The issue here is whether you can extract from those facts a conclusive finding that they then demonstrate that through the use of a dangerous weapon, he either intentionally placed the teller in fear under the assault prong or in an objective state of danger under the jeopardy prong. And as the--- What if it had been a gun, not a knife? And it's a closed knife. What if it had been a revolver? Judge, I think that's a closer question, but I think also it comes back to what the defendant admitted. I can't, as I stand here, think of a circumstance offhand where the defendant would say, yes, I pulled this gun out with this bag, not meaning to do anything with the gun. But certainly, the objective reasonableness of the victim teller's fear or being placed in a state of danger, I think there are gradations, and it would be a stronger case if it had been a gun rather than a closed-pocket knife. Do you want to save your time there?  Thank you very much, Your Honor. Good morning. Andrew Stone for the government. May it please the Court. The question on whether or not there was a sufficient factual record here to find that the defendant was guilty of armed bank robbery is clear that the answer is yes. And I think we need to tie or move towards the elements of what needs to be proven to analyze this issue. And this Court, back in Wagner in 1959 and Coulter in 1973, made clear that in terms of this prong for this armed bank robbery, there are three elements that need to be proven beyond a reasonable doubt, and that is use of a dangerous weapon that places the victim in an objective state of danger. So those are the three elements that need to be shown through the factual basis here. And in looking at this Court's cases and analyzing a number of armed bank robbery convictions and affirming most of them, it's clear that the answer is yes, because under the use category or the use element, which is the first of the three elements, there's case law both in the Supreme Court and in this Court that says just displaying of the weapon is enough for use. And that's... No matter what kind of weapon it is, and I ask opposing counsel about a gun, but in this case, he had a closed pocket knife. He said he put it up there with the bag because he always carries it. He's a homeless person. He carries it with him for defense, and it just happened to be there. He would not sign or wouldn't agree to any part of a plea where he understood he had put the teller in fear. So isn't there a difference between a closed pocket knife and, say, a firearm? Under the case law, no, Your Honor. Well, it... Go ahead. Go ahead. Well, it does depend on some factual determination on whether, say, taking it out of his pocket, you know, and either putting it on to counterintentionally or maybe accidentally, does not go to whether that's an intentional displace or whether it amounts to use. Suppose it was accidental. Would that be still use? Would that be a display? So the case law under Odom in this Court suggested that when a gun was in the robber's waistband and he never displayed it, never discussed it, then it was not use. But this Court made clear in that case what is the common denominator for all of the is that the robber knowingly made one or more victims aware he had a weapon. And so... But that's the question. Did he do it knowingly or did he do it accidentally? Under the facts, as stated in the factual basis in the change of plea hearing, it's clear that he knowingly put the knife on top. He may not have had... What's the facts on that? The facts... The defendant said, yes, I knowingly put the pocket knife on the counter? No, as the factual basis reads, is that the knife was in his pocket. He took the bag out and he took the knife and he placed the knife on top of the bag. And... By the way, you know, I couldn't find, maybe you can help me, anything in the record as to what the size of this pocket knife is. Is there anything in the record on that? I'm not sure there is anything in the record. There's not. Well, the reason I ask is, you know, I have a pocket knife literally about an inch long. Is an inch long, display of an inch long pocket knife... Yes, for... Is it a dangerous weapon? For two independent reasons, Your Honor. First, in Smith, this decision that this case decided under a different statute, it talks about inherently dangerous weapons, and that includes guns, knives, and the like. Now, if the answer is, well, a pocket knife is different than an inherently dangerous weapon, it's still considered dangerous under Martinez-Jimenez. And Martinez-Jimenez is a case decided by the Ninth Circuit, which said a plastic gun, which the robber held down by his side and attempted to not show the patrons and the employees of the banks. That's why he held it down on his side. That was enough to affirm an armed bank robbery conviction. And it's because of three reasons. Give me your best case that, say, you know, a very small pocket knife is a dangerous weapon if it's displayed, you know, unopened. What's your best case that would... I think Martinez-Jimenez, where there was a fake plastic gun, and then Boyd, which had a road flare where he said it was a stick of dynamite. Those are both items that could not have harmed anyone, whereas a pocket knife could actually harm someone. But even if it wasn't actually dangerous... Well, there are different cases that, you know, because they go to, you know, whether or not, for instance, you know, somebody says, I'm wearing a suicide vest. Well, you know, most people can't examine it, you know, and tell whether it's genuine or not. So, I mean, that, you know, qualifies as a dangerous weapon because, you know, it could fool an ordinary person into believing it's real. But so the cases you said are not the same as, you know, a small pocket knife. And what's your case that says an unopened small pocket knife put on the counter is a dangerous weapon? No, it's not a case that's on all fours with this one. You have no case right on point. That says that a small pocket, under the exact same facts as this case? No. Exact same facts. Just, you know, a small pocket knife. I don't have a case that says a small pocket knife, Your Honor.  When there is a dangerous device that is used in the commission of a bank robbery, it rises to a finding of sufficiency in terms under the statute. But a plastic gun versus a real gun, you can't tell the difference when they're holding it. That's different. True, Your Honor, but a knife is still a knife, which has been found to be inherently dangerous. It's manufactured to harm people. And it also, when it is used in the commission of a bank robbery, keep in mind, he's laying over the counter. That was one of the facts that was admitted. He's directing the bank tellers, don't take the money out of the top drawer, take it out of the bottom drawer. He's telling other bank tellers to get the money. This isn't like if I had a pocket knife right here while I'm speaking to you, which may not be dangerous. But this is in the middle of a bank robbery. And that's what the case law says. It says that when you have a weapon like this, it subjects victims to greater apprehension. It makes it so that law enforcement will have a more deliberate plan because there is a reasonable use that there could be harm to human life. And there's also the potential that a reasonable response by police will include deadly force. And so that's why the number of cases that find weapons that can't do any harm, the plastic gun, the road flare, things like that, have been found to be enough to be sufficient for an armed bank robbery. Counsel, I want to change a little bit. We've got a lot of things in this case to talk about and not much time. Everybody seems to agree that, although our case law is not clear on this, that if the government fails to plead the agreement in the plea agreement not to appeal, that that's waived. But what is not clear in our case law, I don't think, is whether the district judge has the right, sua sponte, even though the government has not raised the appeal issue, that the court has the right to raise it on its own. Would you address that, please? What's your best authority for the idea that the court, the district court, on its own could raise the appeal waiver if the government had not done so? Well, this, again, was a plea that was straight up to the court and not under a plea agreement. So there was no agreement that was governing the rights of the parties here. The defendant, there was a superseding indictment, three counts, and the defendant eventually pled guilty to all three. But you're saying there was no appellate plea agreement in this case? There was no plea agreement. It was a plea that was straight up to the court. So I think that because there was no appellate waiver, then we're...  You're saying there was no appellate waiver? There was no appellate waiver here. Okay. So unless there are any further questions, then I would submit on the papers and ask you to affirm. Thank you. Any questions by my colleagues? No. All right. Thank you. Thank you. Counsel, you have a little rebuttal time. If I may address briefly the issue of the plea agreement, I believe that what may have engendered some of the confusion in the record is in the record there is a document entitled plea agreement. That was never actually entered in court. That was a document that the government's counsel at the time prepared to assist the magistrate judge in understanding the maximum penalties, et cetera, et cetera, called it plea agreement. But he did not enter a plea pursuant to a plea agreement. Okay. So there was no discussion then about the government's not raising any of this? Not in this particular case, Your Honor, no. Interesting. I'd like to return just briefly to the issue of the small pocketknife and whether that's a dangerous weapon under the case law in the same sense that some of the other cases that the government has cited. Of course, we don't know if it was a small pocketknife or not. We do not, Your Honor. We do not. I'll just refer to a pocketknife in general regardless of size. Government's counsel is correct. I don't know of any case in this circuit or even elsewhere that specifically addresses that point other than we cited in our reply brief, I believe, this Court's NOS in which the Court indicated that depending on the circumstances in which it is used, a pocketknife can be a dangerous weapon, but did not say that categorically or per se it is. Again, it was tethered to the circumstances of use. And that particular case has not been overruled, nor has it been specifically abrogated or modified in light of some of the more recent cases that the government has cited in its answering brief. And if there are no further questions, thank you. I think not. Thank you both for your argument in the case. The case just argued is subpoenaed.
judges: Tashima, M. Smith, Piersol